Tagged Opinion

ORDERED in the Southern District of Florida on _____ July 30, 2008

Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re                                            CASE NO. 07-21261-BKC-LMI

DARRELL K. WILSON                    Chapter 13

                    Debtor(s).
_____/

## ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO DEBTOR'S EXEMPTIONS

THIS MATTER came before the Court for evidentiary hearing on June 11, 2008 upon Objection to the Debtor's Claimed Exemptions (DE #51) filed by Creditor American Investment Services' ("AIS"), Trustee's Supplemental Objection to Exemptions (DE #69), and Trustee's Amendment to Supplemental Objection to Exemption (DE #97) filed by the chapter 13 Trustee ("Trustee"). AIS and the Trustee object to the Debtor's claim of exemption of certain real property because at least part of the property is used for business purposes. AIS and the Trustee also object to the Debtor's claim of exemption of several potential causes of action scheduled by the Debtor as assets. Having reviewed the objections, the Debtor's response (DE #109), and the

Case No. 07-21261-BKC-LMI

evidence presented, I hereby SUSTAIN in part and OVERRULE in part the objections to exemptions.

## PROCEDURAL BACKGROUND

Darrell Wilson ("Wilson" or "Debtor") filed this Chapter 13 bankruptcy case on December 19, 2007. The Debtor included in his bankruptcy Schedule A seven parcels of real property. The Debtor also included in his Schedule B claims or causes of action against Norman G. Moodle, Miami-Dade County, and AIS. The three causes of action will be referred to collectively as the "Scheduled Causes of Action." The Debtor claimed as exempt on Schedule C three of the seven parcels in accordance with Fla. Const. art. X, §4(a)(1) and Fla. Stat. §§222.01 and 222.02.[1] The Debtor also scheduled as exempt the Scheduled Causes of Action, based on "Florida common law." The Trustee and AIS each filed objections to the exemptions and the objections were scheduled for trial.

The Debtor conceded at a pretrial hearing that only one parcel was his homestead - property located at 726 NW 79th St. Miami, Florida 33150. According to the public records of Miami-Dade County, Florida, 726 N.W. 79th Street, Miami, Florida 33150 is a parking lot owned by Keith Wilson[2] as Trustee. Property located at 729 N.W. 79th Street, Miami, Florida 33150 is described in the public records of Miami-Dade County, Florida as a commercial building. This property is also owned by Keith Wilson as Trustee. The Debtor claims the public records are incorrect; the building's address is 726 N.W. 79th Street and it is not a parking lot. Whatever the correct street address, the Debtor is not seeking an exemption for a parking lot. This opinion will address the Debtor's right to claim a homestead exemption in the building described in this opinion, whatever is the building's correct street address.

---

[1] The Debtor claimed the following real property as exempt: 718 NW 79th St., 726 NW 79th St., and 728 NW 79th St. [Schedule C (DE #26)].
[2] The Debtor also goes by the name Keith Wilson.

2

The building at issue houses an adult entertainment club called Club Purple Ice.[3]  On the second floor of the building there is an apartment. The uncontroverted evidence shows that the apartment comprises 640 of the building's 8,150 square feet.  AIS and the Trustee (collectively "Movants") argue that the building cannot be claimed as homestead because it is primarily used for business purposes. Further, the Movants argue that the Debtor cannot claim even the apartment as his homestead since, based on the Trustee's physical inspection, the Debtor could not have been living in the apartment. Consequently, Movants argue that the Debtor's claim of homestead exemption for the building should be stricken in its entirety, or, alternatively, at least reduced to the 640 square feet that comprise the apartment.

In response, the Debtor contends that he lives in the apartment over the nightclub, and uses the entire nightclub as additional living area during the hours the nightclub is not operating – the Debtor uses the nightclub's kitchen to prepare all his meals, he showers in the nightclub's employee bathroom, and the Debtor uses the lounge area to entertain guests.[4] When the Trustee inspected the apartment, it was empty; the Debtor explained that the reason there was nothing in the apartment was because everything had been moved out to install carpet. The Debtor argues the entire building should be allowed as exempt homestead because he uses it as such.

## DISCUSSION

### I. THE FLORIDA HOMESTEAD EXEMPTION

The Florida Constitution provides in pertinent part:

(a) There shall be exempt from forced sale . . . the following property owned by a natural person:

---

[3] The Trustee's Amended Supplement (DE #97) states that at the Section 341 meeting the Debtor testified the building also houses a tire shop and a barbershop. However, the transcript of the section 341 meeting, if one exists, does not appear on the court docket and no evidence was presented at trial of additional businesses in the building.
[4] The Debtor contends that his son lives in a room located in the nightclub.  However, as the Movants correctly argue, and as more fully discussed below, the Debtor's adult son cannot be included as a family member for purposes of the homestead exemption because he is not a dependant of the Debtor.

3

> (1) a homestead, if located outside a municipality, to the extent of one
> hundred sixty acres of contiguous land and improvements thereon, . . . or
> if located within a municipality, to the extent of one-half acre of
> contiguous land upon which the exemption shall be limited to the
> residence of the owner or his family

Fla. Const. Art. X, § 4(a)(1).[5]  The building is located within the City of Miami.

As I have previously noted, Florida's constitutional and statutory provisions regarding homestead property "should be interpreted in the liberal and beneficent spirit in which they were conceived and enacted in the interest of the family home." *In re Ensenat,* No. 06-15979-BKC-LMI, 2007 WL 2029332, at *1 (Bankr. S.D. Fla. May 24, 2007), *quoting White v. Posick,* 150 So. 2d 263, 265 (Fla. 2d DCA 1963). Here, there is no issue that the property exceeds the size limitation, thus the sole issue for me to determine is whether the apartment is the Debtor's homestead and, if so, whether and to what extent the dual purpose of the building impacts the Debtor's homestead claim.

## A. Debtor's Residence

Although the Debtor testified he uses various areas of the nightclub for daily living activities such as eating and bathing, he never claimed any of those areas of the nightclub are reserved exclusively for his personal use, and not also used for the nightclub.  Indeed the evidence is undisputed that the nightclub utilizes the entire downstairs portion of the building, except for a room in which the Debtor's son allegedly lives.  The kitchen is a typical commercial kitchen, the shower area appears to be part of the business, including the presence of signs in the bathroom addressed to employees.  The only means of ingress or egress to or from the upstairs apartment is to enter through the front entrance of the nightclub and climb up a fire escape.  The apartment itself lacked flooring at the time the Trustee inspected the property, except for a layer

---

[5] Fla. Stat. §§222.01 and 222.02 on which the Debtor also relies address procedures for designation of homestead before and after levy.

of plywood, and lacked any kind of personal items one might expect in someone's residence, such as a toothbrush or clothes.  Attached to the apartment is a sundeck on which the Trustee's assistant saw a motorbike, television, chairs, a stereo, and garbage bags.

The Debtor offered the testimony of three witnesses, all of whom either work for the Debtor currently or have done so occasionally in the past.  The witnesses' testimony was not credible.  For example, two witnesses testified that they have known the Debtor for 20 or 30 years and that the Debtor has lived in the apartment above the club for as long as they have known him. However, the Debtor himself testified that he did not move into the apartment until he purchased the property in 1992.

The Debtor's current employee, Jonathan Baker, testified that he had moved all of the Debtor's belongings out of the apartment and onto the sundeck three days beforehand upon the Debtor's request to allow for the installation of carpet. Mr. Baker testified he took everything out of the apartment for carpeting, and even "took everything out of the bathroom." Over the course of those three days, while no carpeting was laid, Mr. Baker testified he moved items in and out of the apartment when the Debtor needed them. Mr. Baker also testified that he removed the faucet handles from the apartment's bathtub, also at the Debtor's direction, because they had been broken for approximately a month. Mr. Baker testified it was part of his job to cook the Debtor's meals, which he did in the nightclub's kitchen, which meals the Debtor ate in the nightclub's lounge and sometimes served to personal guests. One of the Debtor's other witnesses testified that he often ate at the Debtor's business but didn't know whether the Debtor operated a business on the premises.  He later conceded he knows the Debtor operated a nightclub but he doesn't go to places like that.

The Movants had the burden to prove by a preponderance of the evidence that the apartment is not the Debtor's residence. This the Movants failed to do. While the testimony of the witnesses was suspect, the Debtor testified the apartment is his home and no evidence was presented to contradict that testimony. *See, e.g., In re Yettaw*, 316 B.R. 560, 562 (Bankr. M.D. Fla. 2004). Despite the Movants' arguments to the contrary, there is no requirement that a residence must include a kitchen, bathroom, or any of the niceties found in many homes. *See, e.g., In re Mangano*, 158 B.R. 532 (Bankr. S.D. Fla. 1993) (finding that even an automobile could be considered a residence for homestead purposes so long the debtor is "truly living in a truck or van and has no other residence"). Moreover, the fact that the Debtor has claimed the building as his homestead previously but does not do so now is not dispositive of this issue. Because the Movants have failed to show that the Debtor has another residence, I find that the Debtor's residence is the apartment above the nightclub. However, I must still determine whether the Debtor is entitled to claim all or only a part of the building as his homestead since it is undisputed that the apartment constitutes only a small portion of the building.

## B. Application of Exemption to Business Property

Despite its liberal interpretation, courts have repeatedly held that the homestead exemption cannot exempt property used for business purposes. *See In re Radtke*, 344 B.R. 690 (Bankr. S.D. Fla. 2006); *Menard v. Univ. Radiation Oncology Assoc.*, 976 So.2d 69, 75 (4th DCA 2008); *Thompson v. Hibner*, 705 So.2d 36 (2d DCA 1997); *First Leasing & Funding of Fla., Inc. v. Fiedler*, 591 So.2d 1152 (2d DCA 1992). The 1885 Florida Constitution provided an exemption that extended to the "residence and business house of the owner." *First Leasing & Funding of Fla., Inc. v. Fiedler*, 591 So.2d at 1152, *quoting* Fla. Const. of 1885, art. X, §1. However, this section was changed in 1968; among other changes was the deletion of the

6

language "business house" and the insertion of the restriction that the exemption for property located within a municipality is limited to the "residence of the owner or his family." *Id.* The change in the 1968 Constitution made it clear that the homestead exemption should not be applied to property used for business purposes.

The Debtor does not dispute that at least a portion of the property is used to produce income. However, he maintains that the entire building is his homestead because he uses portions of the business premises for personal use. In support, the Debtor cites two cases that discuss the application of the homestead exemption to non-traditional homes, mobile homes, and RV's, *In re Yettaw*, 316 B.R. 560, and *In re Mangano*, 158 B.R. 532. The facts of these cases are distinguishable from this case; the issue in *Yettaw* and *Mangano* centered on a technical question of whether the homestead exemption could apply to a recreational vehicle used as the debtor's sole residence. That clearly is not the case here. There appears to be no case that supports the Debtor's position that the entire business premises can be exempted because a portion may be used as a part of the debtor's residence.  The question then is, whether any portion of the building may be claimed as homestead; this is the issue to which I now turn.

## C. Apportionment of the Property

When a debtor resides in a building that is used for residential and commercial purposes, the courts have confronted the issue whether the debtor loses any homestead exemption to which he would otherwise be entitled, whether the entire building enjoys the exemption, or whether the building is apportioned.  This was the issue addressed by the Eleventh Circuit in *In re Englander*, 95 F.3d 1028 (11th Cir. 1996).[6] Reviewing the various Florida cases that had sought to resolve this dual use problem, the Eleventh Circuit held that the appropriate resolution when the property could not be divided is to sell the property and apportion the proceeds between the homestead

---

[6] It is not necessary for me to resummarize the case law reviewed by the Eleventh Circuit in reaching its decision.

and non-homestead portion of the properties rather than to declare the entire property homestead or non-homestead. This approach appears to have been followed consistently by courts subsequent to *Englander*. *See, e.g., In re Radtke*, 344 B.R. 690; *In re Nofsinger*, 221 B.R. 1018 (Bankr. S.D. 1998); *Menard v. Univ. Radiation Oncology Assoc., LLP*, 976 So.2d 69 (4th DCA 2008). Thus, I find the Debtor is entitled to a homestead exemption for that portion of the building that functions solely as his residence, that is, the apartment.

## D. The Meaning of Family for purposes of the homestead exemption

To determine whether, in addition to the apartment, the room occupied by the Debtor's son may be considered homestead, it is necessary to determine whether the Debtor's son is a member of the Debtor's family for purposes of the constitutional exemption. For purposes of the homestead exemption, the test for family is: "(1) A legal duty to maintain arising out of the relationship and (2) a continuing communal living by at least two individuals under circumstances where one is regarded as the person in charge." *Heard v. Mathis*, 344 So.2d 651, 654 (1st DCA 1977), *citing In re Wilder*, 240 So.2d 514 (1st DCA 1970); *Brown v. Hutch*, 156 So.2d 683 (2d DCA 1963). Under this test, "the head of the family must not only be obligated to, but must actually support such dependents." *In re Jones*, 12 B.R. 878, 879 (Bankr. M.D. Fla. 1981), *citing Vandiver v. Vincent*, 139 So.2d 704 (2d DCA 1962). A parent's legal duty to support a child ends when the child reaches the age of majority unless the child is physically or mentally disabled. *Finn v. Finn*, 312 So.2d 726, 728 (Fla. 1975). *See also Applegate v. Cable Water Ski, L.C.*, 974 So.2d 1112 (5th DCA 2008).

The Debtor admitted that his son is an adult who is not physically or mentally disabled. Because the Debtor has no legal duty to support his son, for purposes of the Debtor's homestead, his son cannot be considered a family member and the room he lives in cannot constitute a part

of the Debtor's homestead. Therefore, having found that no portion of the nightclub, including the son's room, is homestead, the only portion of the building that may be considered homestead is the apartment. Based on the size of the apartment, 640 square feet, and the size of the entire building, 8,150 square feet, 7.852% of the building is exempt homestead.

## II. EXEMPTION OF SCHEDULED CASUES OF ACTION

The Movants also object to the Debtor's claim of exemption on three Scheduled Causes of Action. The claim against Norman Moodle is described as "breach of contract and/or lease, slander of title, abuse of process, frivolous foreclosure, etc." The claim against Miami-Dade County is described as "arising out of improper procedures relating to contractors license." The claim against AIS is described as "related to and arising out of origination of mortgage and foreclosure action thereon, including fraud, abuse of process, and related mortgage, including to set aside final judgment on various grounds, including pursuant to section 199.282."

Florida has opted out of the federal exemptions, and thus the Debtor is entitled to rely on Florida exemptions, which are enumerated in chapter 222 of the Florida Statutes. None of the Scheduled Causes of Action fits within the exemptions listed in this statute. Further, the Debtor has not cited to, nor am I aware of, any Florida common law that would provide an exemption. Therefore, the objections to the exemption claimed for the Scheduled Causes of Action is sustained.

## CONCLUSION

Based on the foregoing, it is ORDERED:

1.      The Movants' objections to the Debtor's exemptions are SUSTAINED in part and OVERRULED in part.

2.      The Debtor is entitled to a 7.852% homestead exemption in the building described in this opinion.  The parties are directed to confirm the correct address and file notice of same.

3.      The Movants' objection to the Debtor's exemption of the Scheduled Causes of Action is SUSTAINED; those exemptions are disallowed.

###

Copies provided to:
Peter Spindel, Esq.
Nancy N. Herkert, Esq.
Amy Carrington, Esq.
Darrell Wilson, Debtor

*Attorney Spindel shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*